**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

ESPERANZA CASTRO

Plaintiff,

vs. No. CV 20-cv-00622 WJ/CG

ZURICH AMERICAN INSURANCE COMPANY,

Defendant, Third-Party Plaintiff,

vs.

JOSEPH SMITH,

Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**and**
**GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon Motions for Summary Judgment by both parties. Plaintiff Castro seeks summary judgment against Defendant (**Doc. 36**, filed February 23, 2021), and Defendant Zurich American Insurance Company ("Zurich") seeks summary judgment in a cross-motion against Plaintiff (**Doc. 40**, filed March 15, 2021) also as a response to Plaintiff's motion for summary judgment). Having reviewed the parties' pleadings and the applicable law, the Court DENIES Plaintiff's motion (Doc. 36) and GRANTS Defendant's motion (Doc. 40).

## BACKGROUND

This is a declaratory action case to determine insurance coverage following an automobile accident that occurred on April 30, 2018. Third-party defendant Joseph Smith is a welder employed by Jones Contractors, Inc. ("Jones Contractors"). Mr. Smith was driving eastbound in

his welding truck (a 2016 Ford F350) on State Road 31 in Eddy County, New Mexico on his way to a job site. In an attempt to pass a tractor-trailer, Mr. Smith veered into the westbound lane and in doing so, collided with an oncoming vehicle in which Plaintiff Esperanza Castro was a passenger.

## I. Procedural Background

This lawsuit began when Ms. Castro filed a state court complaint for declaratory judgment against Zurich on May 6, 2020 in the First Judicial District Court, County of Santa Fe. Defendant removed the case to federal court on June 26, 2020. The complaint alleges that Plaintiff sustained significant injuries from the accident and it is anticipated that she will require at least two more surgeries to regain use of her knee and shoulder. The dispute at the center of this case is whether Mr. Smith's vehicle was covered under the commercial auto insurance policy issued by Zurich ("Zurich policy").[1]

## II. Relevant Policy Provisions

Jones Contractors obtained Commercial Auto Insurance Policy No. BAP 018590-02 ("the Policy") from Zurich for the October 1, 2017 to October 1, 2018 policy period. Doc. 36-2 (Zurich policy).

### A. Coverage and Exclusions

The Policy contains a Business Auto Coverage Form which includes a table that shows numerical symbols used on the Declarations Page to describe covered auto designations:

[1] A year and a half earlier, on October 8, 2018, Ms. Castro filed a lawsuit against Mr. Smith in the Fifth Judicial District Court of Eddy County, Cause No. D-503-CV-2018-01647 (the "underlying action"). In that action, Ms. Castro amended her complaint to join Jones Contractors, Inc. as a party to the litigation on the theory that Jones Contractors was liable for Joseph Smith's conduct occurring during the course and scope of his employment. On October 13, 2020, the court in that case granted Jones Contractors summary judgment on the vicarious liability claim because it could not be disputed that Mr. Smith was not acting within the course and scope of his employment for Jones Contractors, Inc. when the automobile accident occurred.

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

Doc. 36-2 at 45. The Schedule of Coverage shows premium amounts for covered autos which are designated by the numerical symbols:

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| COVERED AUTOS LIABILITY | 1 | $1,000,000 | $ [redacted] |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS SEE ENDT DEDUCTIBLE. | INCL |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS DEDUCTIBLE FOR EACH ACCIDENT. | |
| AUTO MEDICAL PAYMENTS | 2 | $ 5,000 EACH INSURED | INCL |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | 2 | SEE ENDT | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | SEE ENDT | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2, 8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDT DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | $ [redacted] |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2, 8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDT DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | $ [redacted] |
| PHYSICAL DAMAGE TOWING AND LABOR | | FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| | | TAX/SURCHARGE/FEE | $ [redacted] |
| | | PREMIUM FOR ENDORSEMENTS | $ [redacted] |
| | | *ESTIMATED TOTAL PREMIUM | $ [redacted] |

Doc. 36-2 at 34. Thus, under the Schedule of Coverages and Covered Autos, all Symbol 1 autos ("Any Auto") are covered by the Policy for liability and all Symbol 8 autos ("Hired Autos Only") are covered for "physical damage comprehensive" and "physical damage collision."

As indicated above, Symbol 8 autos include autos that are leased, hired, rented or borrowed, but does *not* include any auto leased, hired, rented or borrowed from *employees* . . . *Id.* The Policy expressly *excludes* from coverage:

> (1) The owner or anyone else from whom you hire or borrow a covered "auto" and
>
> (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household."

Doc. 36-2 at 46-47 (Section II, Covered Autos Liability Coverage).

B. <u>Lessor Endorsement Schedule</u>

The Policy contains a "Lessor -Additional Insureds and Payees Endorsement" ("Lessor Endorsement") describing coverage for "leased autos." The portion entitled "Schedule" lists Jones Contractors as the named insured, and "All Lessors" as "Additional Insureds." The Policy provisions apply "unless modified" by the Lessor Endorsement. Doc. 36-2 at 25 ("With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply **unless modified by the endorsement**.") (emphasis in original). The section on "Coverage" in Lessor Endorsement states:

**A. Coverage**

1. Any "leased auto" designated or described in

> the Schedule will be considered a covered ''auto'' you own and not a covered ''auto'' you hire or borrow.
> 2. For a ''leased auto'' designated or described in

> the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an ''insured'' the lessor named in the Schedule. *However, the lessor is an ''insured'' only for ''bodily injury'' or ''property damage'' resulting from the acts or omissions by:*
> **a.** You;
> **b. Any of your ''employees'' or agents; or**
> **c. Any person, except the lessor or any ''employee'' or agent of the lessor, operating a ''leased auto'' with the permission of any of the above.**

Doc. 36-2 at 26, Section A (emphasis added). "Leased Auto" is defined in the Lessor Endorsement:

> As used in this endorsement:
> ''Leased auto'' means an ''auto'' leased or rented to you, including any substitute, replacement or extra ''auto'' needed to meet seasonal or other needs, **under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.**
>
> 3. The coverages provided under this endorsement apply to any ''leased auto'' described in the Schedule until the expiration date shown in the Schedule**, or when the lessor or his or her agent takes possession of the ''leased auto'', whichever occurs first.**

*Id.*, Section E (emphasis added).[2] The Policy does not list any names under the "Named Driver Exclusion Endorsement." Doc. 36-2 at 27.

[2] The parties agree that the policy provisions speak for themselves, and dispute only whether the policy was issued to cover Mr. Smith's welding truck. However, as Defendant notes, Plaintiff refers to the Policy's Lessor Endorsement in her factual section but fails to cite specifically to *either* the Lessor Endorsement's definition of "leased auto" at Section E or Section A.3 which provides that coverage under the Lessor Endorsement expires when the lessor takes possession of the "leased auto."

Both parties acknowledge that the Lessor Endorsement Schedule "changes" and "modifies" other Policy provisions.

**III. Undisputed Facts**[3]

The material facts are generally undisputed. Parties disagree on the legal significance of those facts as to whether Mr. Smith is an "insured" and whether his welding truck is a "leased auto" under the Zurich Policy.

On April 30, 2018, the day of the accident, Mr. Smith was driving a Ford F350 welding truck that he owned. Jones Contractors does not own their own welding trucks or equipment.

While employed with Jones Contractors, Mr. Smith was paid an hourly wage for his work. He was also paid an hourly sum for the use of his welding truck while he was on the clock. Doc. 40-2 (Smith Depo. at 13:20-25; 14:9-25) and Doc. 40-1 (Jones Decl. at ¶2).

Mr. Smith earned his hourly wages for his labor and his truck when he was on the job site and clocked in for work. Doc. 40-2 (at 15:1-12 19:8-20:2). He would not get paid for travel in between job sites. He would have to clock out, drive to the next site and then clock back in. Doc. 40-2 at 3 (at 19:19-25).

At the time of the accident, Mr. Smith insured his welding truck through Geico Insurance Company. Doc. 40-3.

Plaintiff's summary judgment is grounded in the contention that the unambiguous language of the Policy covers Mr. Smith's vehicle as a "leased vehicle" and that Mr. Smith is an "insured" under the Policy. Zurich argues that Mr. Smith was not an "insured" under the Zurich policy because his vehicle was not being leased at the time of the accident and Jones Contractors did not agree to provide any lessor direct primary insurance for Mr. Smith or his welding truck.

[3] For ease of reading, references to exhibits are omitted unless necessary.

## IV. Legal Standard

Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Callahan v. Unified Gov't of Wyandotte County*, 806 F.3d 1022, 1027 (10th Cir. 2015). An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The analysis is the same in an insurance case. Interpreting insurance policies and determining policy rights and obligations "are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. U.S. Fidelity*, 143 F.3d 5, 8 (1st Cir. 1998); *Winters v. Charter Oak Fire Ins. Co*., 4 F.Supp.2d 1288, 1291 (D.N.M. 1998) (construction of an insurance policy is a matter of law that can be decided through summary judgment). When facts are undisputed, and the only issue is the application of an insurance policy, all that remains is a question of law for the court. *See Benns v. Continental Cas., Co*., 982 F.2d 461, 462 (10th Cir. 1993); *Gamboa v. Allstate Ins. Co*., 1986-NMSC-078, ¶ 9, 104 N.M. 756.[4]

Ordinarily, when reviewing a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). Here, the parties have filed cross-motions for summary judgment, but this does not change the standard of review. *Burrows v. Cherokee County Sheriff=s Officers*, 2005 WL 1185620 (D. Kan. May 18, 2005) (unpublished opinion) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 249 (6th Cir. 1991)). Where the parties file cross motions for summary judgment, the court

---

[4] There appears to be no dispute that New Mexico law governs the policy. *See* Doc. 16 at 2 (Joint Status Rep't).

is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). Also, cross-motions for summary judgment are to be treated separately; "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

**DISCUSSION**

The obligation of an insurer is a question of contract law and will be determined by reference to the terms of the insurance policy. *See Safeco Ins. Co. of Am., Inc. v. McKenna,* 90 N.M. 516, 520, 565 P.2d 1033, 1037. The policy should be construed as a complete and harmonious instrument. *See Erwin v. United Benefit Life Ins. Co.,* 70 N.M. 138, 371 P.2d 791 (1962); *Schultz & Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972) (A contract will be considered and construed as a whole, with meaning and significance given to each part in its proper context, so as to ascertain the parties' intentions). Where a clause "read alone is clear and unambiguous . . . it is not necessary to read the coverages together," because "there is a risk of creating, rather than identifying, ambiguity." *Battishill v. Farmers Alliance Ins. Co.,* 2006–NMSC–004, ¶ 16, 139 N.M. 24, 127 P.3d 1111. "Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 17, 399 P.3d 400, 407 citing *Hinkle v. State Farm Fire & Cas. Co.*, 2013-NMCA-084, ¶ 18, 308 P.3d 1009 (alteration, internal quotation marks, and citation omitted).

The central question is whether Mr. Smith qualifies as an insured under the Policy's Lessor Endorsement. Plaintiff argues that the Policy, when construed as a whole, provides

coverage for "all leased vehicles"—which includes the vehicles Jones leased from its employees, and covers "all lessors" of the leased autos, including lessors who are its employees.

## I. Facts Support a Finding of No Coverage Under the Policy

Based on the terms of the Lessor Endorsement, for Mr. Smith to qualify as an insured under the Lessor Endorsement, the following conditions must apply:

(1) the vehicle must be leased at the time of the accident;

(2) the lease agreement must require Jones Contractors to provide the lessor with direct primary insurance, and

(3) the vehicle cannot be in the possession of the lessor at the time of the accident.

### A. Defendant's Evidence

Defendant presents evidence showing that Mr. Smith's welding truck was not being leased at the time of the accident and that Jones Contractors did not agree to provide any lessor direct primary insurance for Mr. Smith or his welding truck. Mr. Heath Jones, President of Jones Contractors, stated in his Declaration that Mr. Smith was solely responsible for insuring his welding truck and that he did not have a leasing or rental agreement with Jones Contractors whereby Jones Contractors agreed to provide direct primary insurance for Mr. Smith's welding truck. Mr. Jones also understood that the accident occurred while Mr. Smith was driving to a work site. Doc. 40-1 (Heath Decl.), Deft's Statement of Fact ("SOF") No. 8.[5]

Plaintiff contends that Mr. Jones' Declaration is "self-serving" but the Court summarily rejects this contention. First, who better than the President of Jones Contractors would be familiar with the details regarding Mr. Smith's employment and compensation? Second, Plaintiff offers no explanation at all as to why she believes the Declaration is "self-serving." It is

[5] Because Document 40 is both Defendant's response to Plaintiff's motion for summary judgment as well as its own cross-motion, the Court refers to Defendant's "Additional Statement of Facts" as "Statement of Facts."

obviously based on Mr. Jones' personal knowledge as Mr. Smith's employer and therefore presents admissible evidence. *See Murray v. City of Sapulpa,* 45 F.3d 1417, 1422 (10th Cir. 1995) (requiring that to survive summary judgment a nonmovant's affidavit must be "based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient"). The Court therefore deems the facts set forth in Mr. Jones' Declaration as undisputed because Plaintiff offers no evidence refuting them.

Defendant also presents evidence that Mr. Smith was not on the clock and was not at the jobsite at the time of the accident.

Q. Were you on the clock when that wreck occurred?

A. No.

Q. . . . What other definitions of working would you perceive that you could say, yes, I was working.

A. No, I would say I wasn't working. I was just driving.

Doc. 40-2 at 5 (Smith Depo. at 24:7-17); *see* Deft's SOF No. 7.

Plaintiff characterizes this fact as "misleading." However, in response to Defendant's fact, Plaintiff refers to a portion of Mr. Smith's testimony where he purportedly states that he "was traveling in the **leased** welding truck to a Jones job in Texas and was giving a ride to another Jones' employee to that job." Pltff's Resp. to Deft's SOF No. 7) (emphasis added). The testimony actually contains no mention of the word "leasing" or any suggestion that Mr. Smith was either "working" or "on the clock":

Q. . . . And on April 30th of 2018, you had a helper with you?

A. Yes, sir.

Q. A Lee ---

A. Stevicks.

Q. Stevicks. Also employed with Jones Contractors?

A. Yes.

Q. And how long had you worked with Lee?

Q. I worked with him I want to say a year before that.

Doc. 40-2 at 2 (Smith Depo. at 15:13-23). Therefore, the Court deems it undisputed that Mr. Smith was not on the clock and not at a jobsite at the time of the accident.

B. Plaintiff's Evidence

Plaintiff claims that Mr. Smith "affirmatively states" that Jones Contractors "leased" his vehicle in furtherance of its business. Pltff's Rsp. to Deft's Statement of Fact ("SOF") No. 4.

Mr. Smith stated nothing of the kind. In his deposition, Mr. Smith actually stated that he received $15/hour for *both* the use of his truck *and* the use of his welding equipment. Doc. 36-1 at 3 (Smith Depo. at 19:25-20:7). Again, Mr. Smith did not mention "leasing" at all and he made it abundantly clear that he was not paid separately for the use of his truck. Plaintiff's mischaracterization of the evidence is insufficient to create a factual dispute on the question of whether Mr. Smith stated that his employer "leased" his welding truck.

## II. Mr. Smith's Truck Was Not a Leased Vehicle Under the Policy

Having determined what the undisputed facts are in this case, the Court finds that those facts support Defendant's motion. For purposes of the parties' cross-motions, Defendant presents material factual disputes which preclude summary judgment for Plaintiff, but on the other hand, Plaintiff offers no evidence suggesting that there *is* coverage under the Policy. The Court now applies the undisputed facts to the relevant Policy provisions.

A. No Coverage Under the Business Auto Coverage Form

- Section I of the Business Auto Coverage Form states that there is no coverage for "autos" leased, hired, rented or borrowed from "employees." Doc. 36-2 at 45 (defining "Hired "Autos" as *not* including any "auto" you lease, hire, rent or borrow from any of your "employees . . . .").

- The definition of "insured" in Section II ("Covered Autos Liability Coverage) expressly *excludes* from coverage any covered "auto" owned by an employee, as well as the "owner" of any car that is hired or borrowed. Doc. 36-2 at 46-47. It is undisputed that Mr.

Under these provisions, coverage is expressly excluded for any vehicle owned by an employee, including Mr. Smith and his welding truck.

B. <u>No Coverage Under the Lessor Endorsement</u>

Both parties recognize that the Lessor Endorsement provisions modify the Policy and so these provisions ultimately control whether Mr. Smith is an "insured" and whether coverage exists for his welding truck. The Court finds that when considering these provisions in context and as a whole, Mr. Smith is not an "insured" and that his truck is not a "leased auto" under the Zurich Policy, as explained in the sub-categories within these paragraphs:[6]

- *Policy provision:* Any lessor of a "leased auto" is an "insured" for "bodily injury" or "property damage" that is caused by an "employee" or "agent." Doc. 36-2 at 26 (A.2(b)). However, the lessor is not an "insured" for "bodily injury" or "property damage" if the lessor is "operating" the "leased auto." Doc. 36-2 at 26 (Section A.2(c) (emphasis added).

[6] To recap that provision of the Lessor Endorsement here:

> 2. For a "leased auto" designated or described in the Schedule, the Who Is An Insured provision under Covered Autos Liability Coverage is changed to include as an ''insured'' the lessor named in the Schedule. However, the lessor is an ''insured'' only for ''bodily injury'' or ''property damage'' resulting from the acts or omissions by:
> a. You;
> b. Any of your ''employees'' or agents; or
> c. **Any person, except the lessor** or any ''employee'' or agent of the lessor, **operating a ''leased auto'' with the permission of any of the above.**

Doc. 36-2 at 26, A.2 (emphasis added).

- *Court finding:* Based on the undisputed facts of this case and even assuming Mr. Smith is a "lessor" whose acts or omissions resulted in bodily injury or property damage, Mr. Smith would not be an "insured" under the Lessor Endorsement because it is undisputed that he was operating the ("assumed) "leased auto" with the permission of the owner.

- *Policy provision:* Coverage under the Lessor Endorsement ends when the lessor takes possession of the "leased auto."[7]

    - *Court finding:* Here, even assuming that Mr. Smith's welding truck qualifies as a "leased auto" under the Lessor Endorsement, there is no coverage because it is undisputed that the truck was in the possession of Mr. Smith (the alleged lessor) at the time of the accident. *See Allstate Ins. Co. v. Ford Motor Credit Co.*, 236 F. App'x 405 (10th Cir. 2007) (individual hired to repossess leased truck was in possession of the vehicle when it struck lessee, thereby invoking the expiration provision).

- *Policy Provision:* A "leased auto" means an auto leased "under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor. Doc. 36-2 at 26 (E. "Additional Definition").

    - *Court finding:* Plaintiff maintains that Mr. Smith's welding truck was a leased vehicle under the Policy, but fails to submit any indicia of a leasing or rental agreement that required Jones Contractors to provide direct primary insurance for the lessor. Defendant presents a copy of the Geico policy that was issued to Mr. Smith for his truck, Doc. 40-3, which Plaintiff characterizes as "misleading" because Defendant does not show which insurance policy was "primary." However, Plaintiff misapprehends his burden in order to prevail on his summary judgment motion. In order to create a factual dispute on this issue, it is *Plaintiff* who must present some evidence of a leasing agreement to provide for direct primary insurance for Mr. Smith's truck—and this she has not done. *Chronister v. State Farm Mut. Auto. Ins. Co.*, 1963-NMSC-093, ¶ 8, 72 N.M. 159 (the insured has the burden to prove that she or he is covered under the Policy). On the other hand, Defendant presents evidence of the Zurich policy that does not reference Mr.

---

[7] Again, to recap this portion from the earlier discussion:

> 3. The coverages provided under this endorsement apply to any ''leased auto'' described in the Schedule until the expiration date shown in the Schedule**, or when the lessor or his or her agent takes possession of the ''leased auto,''** whichever occurs first.

Doc. 36-2 at 26 (A.3).

Smith's truck at all as well as evidence of the Geico insurance policy issued to Mr. Smith providing direct coverage on his truck—and both are unrefuted by Plaintiff.[8]

Plaintiff presses on, despite the very plain language of the provisions in the Lessor Endorsement excluding coverage for Mr. Smith's welding truck. Plaintiff states that "Zurich may argue that there is a conflict in the Lessor Endorsement," specifically, between the identification of "All Lessors" as "Additional Insureds" and the exclusion of "the lessor . . . operating a 'leased auto' with the permission of the owner." Doc. 36 at 9. She suggests resolving this "conflict" by considering the parties' intent within the context of the entire contract and concludes that the parties must have intended coverage for "all Leased Vehicles and all Lessors" because Jones Contractors does not own its own welding trucks and its normal business practice was to pay its employees an additional hourly fee to "lease" welding trucks from its employees.

Plaintiff's argument rests on shaky ground. First, it is the classic "straw man" argument. Defendant is not arguing that the terms of the Lessor Endorsement are unclear, inconsistent of ambiguous. Instead, Zurich contends that the more specific terms of the Lessor Endorsement are controlling over the general terms. *See* Doc. 40 at 11 ("When the more specific terms of the Lessor Endorsement are read with the more general terms in the Schedule, it becomes clear that only a lessor of a "leased auto" is considered an "insured" under the Lessor Endorsement"); *see Weldon v. Commercial Union Assurance Co.,* 1985-NMCS-118, ¶9, 103 N.M. 522, 524, 710 P.2d 89 (where general and specific provisions of an insurance policy differ as to coverage or applicability, the specific provision will prevail).

[8] The complete lack of evidence of any type of leasing or rental agreement between the parties in this case precludes any discussion on whether Mr. Smith's truck was *primarily* insured under the Zurich policy. *Cmp. Fireman's Fund Ins. Co. v. CNA Ins. Co*., 2004 VT 93, ¶ 46 (2004) (summary judgment denied where the record not fully developed as to whether parties' written lease agreement was renewed annually and whether trailer involved in accident was listed on the schedule in the last agreement).

The Court agrees as well. There is no conflict that exists within the provisions of the Lessor Endorsement. The "lessor . . . operating a 'leased auto'" simply constitutes one of specific coverage exclusions that is typical in insurance policies, and the Court declines to take up Plaintiff's invitation to apply a meaning that isn't there and where doing so would be contrary to the principles of contract interpretation. *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶17 ("If a policy is clear and unambiguous, then the court does not construe the terms; it merely gives the terms their usual and ordinary meaning."), citing *Apodaca v. Farmers Ins. Co.*, 2003-NMCA-095, ¶ 8, 134 N.M. 188, 75 P. 3d 404; *Gallegos v. Pueblo of Tesuque,* 2002–NMSC–012, ¶ 30, 132 N.M. 207, 46 P.3d 668 ("court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties).

Second, Plaintiff assumes that the welding trucks are "leased" vehicles under the Policy simply because Jones Contracting paid employees an additional fee for use of the trucks and welding equipment. This conclusory statement has no support in the record and is directly contradicted by the evidence. In his Declaration, Mr. Jones stated that Mr. Smith was paid an amount of money while on the job which covered both the use of his truck *and* his welding equipment but that there was no leasing or rental agreement for the truck. Doc. 40-1 at 1. And as the Court has already found, Plaintiff's reliance on Mr. Smith's deposition testimony as evidence that his truck was "leased" is misplaced because Mr. Smith's testimony was mischaracterized.[9]

---

[9] Mr. Smith was paid $15/hour for both the use of his truck and the use of his welding equipment. Doc. 36-1 at 3 (Smith Depo. at 19:25-20:7). This testimony is consistent with Mr. Jones' statement that Mr. Smith was "paid hourly for the use of his personal pickup truck and the use of his personal welding equipment mounted in the bed of his truck." Doc. 40-1 at ¶2.

Also, it is strange why Plaintiff's counsel is reluctant to acknowledge that a worker can be paid an amount of money for use of his own vehicle for work without it meaning that it is "leased" by the employer. Such payment, considered a form of reimbursement to defray wear and tear on a vehicle, is common in many employment situations, including the government sector.

## CONCLUSION

In sum, the Court finds and concludes that the Policy issued by Zurich to Jones Contractors does not provide coverage for Mr. Smith's welding truck on several grounds:

- The undisputed facts confirm Mr. Smith's welding truck was not being leased at the time of the accident. Mr. Smith was off the clock and not being paid for the use of his welding truck at the time of the accident and therefore cannot be a lessor under the Lessor Endorsement.
- When the more specific terms of the Lessor Endorsement are read with the more general terms in the Schedule, it is clear that only a lessor of a "leased auto" is considered an "insured" under the Lessor Endorsement. Under those terms, Mr. Smith's truck was not a "leased auto" because Jones Contractors did not provide a leasing or rental agreement with direct primary insurance covering the truck and so Mr. Smith is not an " insured" under the Policy.
- Mr. Smith also cannot qualify as an insured under the Lessor Endorsement even if the truck was a "leased auto" because he was "operating" the truck and was in "possession" of the truck at the time of the accident—both qualifying as exceptions to coverage under the Lessor Endorsement.

**THEREFORE,**

**IT IS ORDERED** that on the parties' cross-motions for summary judgment:

(1) Plaintiff's Motion for Summary Judgment **(Doc. 36)** is hereby DENIED for reasons described in this Memorandum Opinion and Order; and

(2) Defendant's Cross-Motion for Summary Judgment **(Doc. 40)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall issue separately.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE